IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| BURROUGHS DIESEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: 2:18-cv-48-KS-MTP |
| | ) | |
| THE TRAVELERS INDEMNITY | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S REBUTTAL BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY DR. FERNANDO LORENZO AND MR. J. ROGER CRADDOCK

COMES NOW Defendant The Travelers Indemnity Company of America ("TIA") and files this Rebuttal Brief to Burroughs Diesel Inc.'s ("Burroughs") Response in Opposition to TIA's Motion to Exclude [Doc. 116] and Memorandum in Support of Same [117] ("Response") as follows:

### I.    INTRODUCTION

Through its Motion to Exclude, TIA seeks to exclude three opinions offered by Burroughs' expert, Dr. Fernando Lorenzo ("Lorenzo"):

(1)    Lorenzo's opinion that the HCL vapor at issue constitutes "smoke;"

(2)    Lorenzo's opinion that the metal roofs of all of Burroughs' buildings have lost 80% of their useful life; and

(3)    Lorenzo's opinion that the painted side panels of all of Burroughs' buildings have lost 50% of their useful life.

1

[Doc. 107, p. 1].[1]

Burroughs had the burden of proving Lorenzo's qualifications and the reliability and relevance of his testimony.  *See Lewis v. Kinder Morgan Southeast Terminals, LLC*, 2008 WL 3287219, at *3 (S.D. Miss. Aug. 7, 2008) (citations omitted).  Burroughs has not satisfied that burden.

As an exhibit to its Response, Burroughs submitted a ten-page affidavit of Lorenzo with an **additional 833 pages** of exhibits to the affidavit. ("Lorenzo Affidavit").  Burroughs made its expert disclosures on March 29, 2019, which included two reports authored, in part, by Lorenzo. TIA then deposed Lorenzo on May 31, 2019, which was also the expert discovery deadline in the case.  Burroughs filed the Lorenzo Affidavit on Friday, July 19, 2019.  The out-of-time Lorenzo Affidavit is nothing more than a belated attempt to rehabilitate Lorenzo in order to survive the *Daubert* challenge raised by TIA in its Motion to Exclude.  The Lorenzo Affidavit is due to be struck as untimely, and TIA is filing a Motion to Strike contemporaneously herewith.

Even with the submission of the Lorenzo Affidavit, Burroughs has failed to rebut TIA's arguments set forth in its Motion to Exclude.  First, Lorenzo's opinions relating to the acid vapor as "smoke" are due to be struck as unreliable speculation and conjecture.  Second, Lorenzo's opinions relating to the replacement of the roof panels are due to be struck because Burroughs has failed to establish that Lorenzo's calculation methodology is acceptable, his opinions are based on faulty assumptions that are inapplicable and not supported by the evidence, and he relies on data that omits key pieces of information he identified as important.  Third,

---

[1] Burroughs concedes in its Response that Lorenzo decided to identify the HCL vapor as "smoke" and his report discussing this "smoke" was peer-reviewed by Mr. J. Roger Craddock ("Craddock"). [Doc. 117, p. 17, n. 68].  As such, TIA seeks to exclude the "smoke" testimony of Craddock, because it is derived from Lorenzo's conclusions.

Lorenzo's opinions relating to the damage to the side panels are also due to be struck because his opinions are not based on scientific fact and because his calculation methods are equally flawed and speculative.

## II.     THE EXPERT OPINIONS

### A.     Lorenzo's opinion that HCL vapor is "smoke" is unreliable, speculative, and not based on any expertise, experience, or research.

Burroughs fails to carry its burden showing that Lorenzo is qualified to testify that the HCL vapor is "smoke."   Burroughs first asserts that "the source of Lorenzo's definition of 'smoke' is the dictionary." [Doc. 117, p.18].   That assertion is not true.   Lorenzo did not cite a single source for his "smoke" definition in either his Rule 26 Report or in his deposition.   When asked in deposition what research he conducted to arrive at his definition, he stated: **"I don't recall doing any research on the definition of "smoke."** [Doc. 108-28, pp.76:15-77:5] (emphasis added).   Burroughs does not address this testimony or otherwise explain how this fact is not fatal to his opinion.

Burroughs also claims that, because Lorenzo relied on photographs and the expert report of Richard Edwards ("Edwards") to arrive at his definition of "smoke," his opinion is admissible. [Doc.117, p.18].[2]   In support, Burroughs cites to three pages of Lorenzo's deposition; however, nothing in those three pages of testimony could be construed as Lorenzo stating that he derived his definition of "smoke" from Edwards' report.   In fact, Lorenzo testified that Edwards had identified the acid cloud as a "vapor" rather than "smoke." [Doc.   108-28 pp.79:3-8].

---

[2]Richard Edwards was a metallurgical engineer who TIA retained within days of receiving the claim. He inspected the Burroughs facility on October 26, 2016, and conducted the chloride testing upon which Lorenzo relies.   TIA does not challenge the validity of Edwards' testing, but challenges Lorenzo's use and interpretation of the results.

Next, Burroughs argues that Lorenzo should be allowed to testify that HCL vapor is "smoke" because a metallurgical engineer should be able use a dictionary definition to define "smoke." [Doc. 117, p. 17]. Aside from the fact that Lorenzo did not actually use or reference a dictionary definition, he has not been designated as a lexicologist and is not qualified to testify in any respect about which definitions in any dictionary are the appropriate definitions of a word. *See Lee v. Nat'l R.R. Passenger Corp. (Amtrak)*, 2012 WL 92363, at *3 (S. D. Miss. 2012) (distinguishing between a social worker's expertise in treating PTSD and diagnosing PTSD) (emphasis added); *see also Bryant*, 78 F. Supp. 3d 626, 631 (S.D. Miss. 2015) (an expert's "'specialized knowledge', must be 'sufficiently related to the issues and evidence'" of the case so that the testimony will assist "'the trier of fact'") (quotation omitted).

Burroughs also asserts that, because TIA's expert Dr. Zupan opined as to the definition of "smoke," Lorenzo is also qualified. However, TIA's Motion questions the manner in which Lorenzo arrived at his opinion and the utter lack of any basis, scientific or otherwise, for that opinion. Lorenzo admitted he had never opined on this topic before and did no research in arriving at his opinion that the HCL vapor was "smoke." [Doc. 108-28, pp.76:15-77:5]. By contrast, Zupan researched the question and cited to treatises in arriving at his opinion. Lorenzo's opinion as to the definition of "smoke" is speculation and conjecture, and should be struck. *See Beck v. Koppers,* 2006 WL 2135546, *3 (N.D. Miss. July 26, 2006) (An expert's opinion "must be excluded if based on speculation and conjecture."); *see also Moore v. Ashland Chemical Inc.,* 151 F. 3d 269, 278 (5th Cir. 1998) ("a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.").

4

Burroughs has failed to carry its burden to show any basis for Lorenzo's opinion that the liquid vapor HCL was "smoke."  As a result, Lorenzo's opinion is unreliable speculation and conjecture, unsupported by any scientific research, and cannot be applied to the facts of this case. *See Freehold Management, Inc.,* 2019 WL 1436659, at *4 (N.D. Tex. Mar. 31, 2019) (quotations omitted).   As such, Lorenzo's "smoke" opinions are due to be struck.

**B.     Lorenzo's opinion regarding the roofs' loss of useful life is speculative and not based on any actual observation or testing of the alleged extent of damage.**

In its Response, Burroughs argues that Lorenzo's calculation of the roofs' loss of life is the product of reliable methodology.  However, neither Burroughs nor Lorenzo cite to any treatise or peer reviewed article establishing that the method Lorenzo employed is scientifically acceptable. Burroughs was required to provide evidence establishing that the methodology employed by Lorenzo to arrive at his opinions was scientifically accepted.  *Paz v.  Brush Engineered Materials*, 555 F.3d 383, 389 (5th Cir.  2009).   Burroughs has failed to do so.

Having not provided any evidence or citation establishing that his calculation method is scientifically acceptable, Lorenzo's opinion is unreliable.   In *Paz, supra*, the Fifth Circuit upheld this Court's decision to exclude the plaintiff's expert's opinion that the plaintiff had a particular medical condition.   The Court found that the methodology used to diagnose the plaintiff's medical condition had not been "tested or subjected to peer review or publication" or otherwise established as generally accepted in the medical community. *Id. As* a result the Court held that the expert's opinion was unreliable and the Court excluded the opinion. *Id.*   The Court also noted that the expert's "'mere assurances her methodology for diagnosis was 'generally accepted' in the scientific community was insufficient to render her testimony and report reliable under

5

*Daubert." Id.*   In the present case, aside from Lorenzo's and Burroughs' assurances that Lorenzo's methods are scientifically sound and generally accepted, Burroughs has failed to satisfy its burden of establishing Lorenzo's calculation methodology as reliable under the law.

Lorenzo's unsupported assumptions also render his opinion unreliable.   Lorenzo's entire roof opinion is based on a single test result from a **stainless steel** surface on an ice cooler -- a material that is of completely different kind and character than the **galvanized metal roof panels** at issue. [Doc.   108-28, p.   248: 20-24].   Lorenzo arrived at his opinion regarding the condition of the roofs' galvanized coating without any visual or physical inspection, without conducting any thickness testing, and ignoring all of the sampling Edwards performed on the actual roof structure at issue.     Burroughs argues that Lorenzo used the stainless steel test result because the roof results reflected a roof that had been exposed to rain.   Neither Burroughs nor Lorenzo has identified any treatise or scientific authority to support Lorenzo's use of the single stainless steel test result on the ground, while discarding multiple other test results from the surface of the very galvanized aluminum roof panels at issue.   Absent some source establishing Lorenzo's method as scientifically acceptable, his opinion is due to be struck.

Lorenzo's assumptions based on the single ice machine sample for his entire roof opinion are also flawed because the stainless steel on the ice machine is a different metal than the galvanized metal found on the roofs [Doc. 108-28, p. 248: 20-24; Doc. 108-29, pp.6-8]; the ice machine is on the ground and not close in proximity to any section of the roof; the ice machine is located at the front of Burroughs' property [Doc. 108-28, p. 141:19-22]; and Lorenzo ignored **all** of the sample data actually taken from the very roof that is at issue. [Doc. 108-28, p.181:19-23].

In order to reach his opinion, Lorenzo made an assumption that all of the **galvanized**

6

**metal roof surfaces** throughout the entire eight acres of Burroughs' property had the exact same concentration of HCL across their entire surfaces as a single sample taken from a corrosion pit on the stainless steel surface of an ice machine made of metal that was entirely different than that found on the roof surfaces.   Lorenzo performed no independent evaluation of the roof surfaces, conducted no thickness testing, and made no visual observations of the condition of the roofs when he was on Burroughs' property on March 19, 2019, or at any time.   Having not performed any independent investigation, the assumption Lorenzo makes to reach his conclusions about the roofs is simply a bridge too far.   Lorenzo's opinion is based on false and wholly unsupported assumptions that the sample taken from the stainless steel ice machine was representative of what was actually on the galvanized roof surfaces and that it would react exactly the same.   As a result, Lorenzo's opinion on the roofs is due to be struck.   *See Paz*, 555 F.3d at 388-389 (5th Cir. 2009) (where an expert conducts no independent investigation and based the opinions on assumptions that could not be substantiated, the opinions are due to be struck).

In addition, Lorenzo's use of incomplete data also renders his opinion unreliable. In his deposition, Lorenzo admitted that knowing the amounts of chlorides present at a particular location because it assists in calculating the rate and level of HCL exposure to the roof panels. [Doc. 108-28, pp. 239:17-240:24].   Lorenzo also admitted that knowing the specific location of the samples is an important piece of the puzzle to determine the extent of HCL exposure.   [Doc. 108-28, p.137:12-17].   However, he then admitted that he did not have that critical information when he chose to discard all of the roof results and, instead chose the single stainless steel pit sample on the ice cooler as the basis for his roof calculation.   TIA raised these issues in its Motion, and Burroughs has offered nothing in response.   The combination of not having this

information and ignoring the samples actually taken from the roof is fatal to Lorenzo's opinion. *See Bryant v.   3M Co.,* 78 F.Supp.3d at 633 (where an expert fails to obtain information deemed necessary to make an assessment of an exposure level, the expert's opinion is due to be excluded).   As a result, Lorenzo's opinions as to the damage to the galvanized roof panels are due to be struck.

      **C.**      **Lorenzo's testimony that all of the painted side panels of the Burroughs buildings have lost 50% of their useful life is due to be struck because it is speculative and not based on any acceptable scientific methodology or research.**

In its Response, Burroughs attempts to rehabilitate Lorenzo's opinions on the side panels through the untimely submission of the Lorenzo Affidavit and 833 pages of exhibits.   The Lorenzo Affidavit is due to be struck.   Burroughs had the opportunity to have Lorenzo perform a complete analysis with the requisite methodology and scientific basis leading up to and through its FRCP 26 Expert Disclosure of Lorenzo's opinions. Burroughs' failure to do this in accordance with the Court's Order cannot be remedied through the untimely submission of the Lorenzo Affidavit, that includes ten pages of new testimony and 833 pages of exhibits and supporting material.   The Lorenzo Affidavit is due to be struck, as is Lorenzo's entire opinion regarding the extent of alleged loss of life damage to the painted side panels of the Burroughs buildings.

Burroughs argues that, because Lorenzo saw what he determined to be corrosion damage on the bottom of some of the side panels, his opinion that all of the side panels on Burroughs' property had lost 50% of their useful life is valid.   Burroughs offers absolutely no evidence establishing the reliability of Lorenzo's opinion that HCL vapor would have such an effect on the side panels or that Lorenzo's calculation method is reliable.

With regard to the opinion that HCL vapor would adversely affect a paint coated metal panel, Lorenzo admits that he relied exclusively on an "article" from the website *www.hunker.com* to determine the effects of HCL on paint.   [Doc. 108-28, p. 186:2-10].   In its Response, Burroughs does not even attempt to defend the article as a valid scientific source, instead it argues it was deemed "not necessary" by Lorenzo in his deposition.   Contrary to Burroughs' assertion, Lorenzo was clear in his report and in his deposition that the article was the **sole basis** for his entire opinion on the side panels. Lorenzo's entire opinion that the HCL reduced the paint coating is due to be struck because there is no scientific basis for it.

Burroughs argues that, because Lorenzo viewed photographs that he claimed revealed damage to the side panels, his resulting calculations are valid.   The argument completely fails to address the issue, which is that Lorenzo's calculation method and reliance upon the same flawed selective data extrapolation he used with regard to the roof panels does not meet the required standards of FRCP 26 and cases interpreting its requirements. Pointing out that Lorenzo looked at photographs does nothing to address the issue, or to rebut it.   Thus, TIA re-asserts and incorporates all of its arguments contained in Section B relating to Lorenzo's calculation method and the assumptions upon which it is based, as they apply equally to Lorenzo's opinions regarding the loss of use of the side panels.

Lorenzo testified that he did not perform any actual calculations to reach 50% loss of useful life conclusion.   Instead, he just "reckon[ed] that exposure to that paint would result in 50% reduction . . . we don't know the formulation or anything [of the paint]." [Doc. 108-28, pp. 187:19-188:5;  188:3-5;  *see also* p. 189:22-23].   Burroughs does not rebut that Lorenzo performed no testing or sampling of the side panels to determine whether any paint had corroded,

9

but randomly picked 50% as the amount of useful life lost by the side panels.   Lorenzo's

opinion, coupled with his testimony, makes it clear that this is precisely the kind of "speculation

and conjecture" that must be excluded.    *Beck v. Koppers,* 2006 WL 2135546, at *3 (N.D. Miss.

July 26, 2006); *Seaman v. Seacor Marine LLC,* 326 Fed App'x 721, 725 (5th Cir. 2009) ("The

reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts

underlying the expert's opinion, the link between the facts and the conclusion . . .."); *see also*

*Moore v. Ashland Chem. Inc.*, 151 F.3d at 279 (an expert's testimony cannot "leap [] from an

accepted scientific premise to an unsupported one.").   In addition, Lorenzo has no factual basis

for this conclusion, rendering his testimony irrelevant.   *See Accident Ins. Co. v. Classic Bldg.*

*Design, LLC*, 2012 WL 3913090, at *12 (S.D. Miss. Sept. 7, 2012).

Burroughs has failed to carry its burden showing that Lorenzo's conclusion about the side

panels' loss of useful life is reliable.   Lorenzo's conclusion is not based on any scientific treatise

or methodology, or personal experience.   Instead, Lorenzo testifies that he relied on a

non-scientific website and "just reckoned" that the paint on the side panels had been reduced by

50%.   Because this opinion is based on non-scientific sources and not based on any reasonably

accepted calculation method, it is mere guesswork and unreliable.   Lorenzo's failure to rely on

any scientific treatise or methodology, or personal experience to support his opinions regarding

the side panels coupled with his testimonial admission that his opinion is entirely subjective

prove his opinions regarding the side panels are in complete contravention to the requirements of

the Federal Rules of Civil Procedure; Burroughs' submission of the untimely and highly

prejudicial affidavit containing sources never previously disclosed cannot rehabilitate the fatal

deficiencies in his opinions.   Lorenzo's opinions are not properly founded on scientific methods

or procedures, are unsupported speculation and should be struck. *See Freehold Management, Inc.*, 2019 WL 1436659, at *4.

## III.    Conclusion

Burroughs has failed to carry its burden showing that Lorenzo's opinions with regard to HCL vapor as "smoke," the degree of corrosion and loss of useful life of the roof panels, the effect of HCL on paint covered side panels, and the degree of corrosion and loss of useful life of the side panels are reliable.   Lorenzo's opinions are speculation and conjecture, rely on unreliable methodologies, and should be struck.

WHEREFORE, PREMISES CONSIDERED, TIA respectfully requests that this Honorable Court enter an Order excluding the opinions and testimony as set forth above in this matter for the reasons set forth herein.

Respectfully submitted,

/s Brenen G. Ely
Brenen G. Ely (Bar # 105795)
Susan H. McCurry (Admitted *Pro Hac Vice*)
Attorneys for The Travelers Indemnity
Company of America

**OF COUNSEL**:
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, Alabama 35209
Telephone:    (205) 313-1200
Facsimile:    (205) 313-1201
bely@elylawllc.com
smccurry@elylawllc.com

/s Tom Julian
C. Michael Ellingburg (Bar # 5496)
Tom Julian (Bar # 101905)
Attorneys for The Travelers Indemnity
Company of America

**OF COUNSEL:**
DANIEL COKER HORTON & BELL, P.A.
4400 Old Canton Road, Suite 400
Post Office Box 1084
Jackson, MS 39211-1084
Ph: 601-969-7607
Fax: 601-969-1116
mellingburg@danielcoker.com
tjulian@danielcoker.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the CM/ECF electronic filing system and/or U.S. Mail on this the 26th day of July, 2019.

Ken R. Adcock
ADCOCK & MORRISON, PLLC
P.O. Box 3308
Ridgeland, MS 39158

Matthew D. Miller
Nicholas K. Thompson
Copeland, Cook, Taylor & Bush, P.A.
P.O. Box 17619
110 Sheffield Loop (39402)
Hattiesburg, MS 39404-7619

Edwin S. Gault, Jr.
Spencer M. Ritchie
FORMAN WATKINS & KRUTZ, LLP
210 E. Capitol Street, Ste. 2200 (39201)
P.O. Box 22608
Jackson, MS 39225-2608

Albert S. Nalibotsky
Saltz Matkov P.C.
6805 Morrison Blvd.
Suite 470
Charlotte, NC 28211

W. Hugh Gillon, IV
UPSHAW, WILLIAMS, BIGGERS & BECKHAM, LLP
Post Office Box 3080

Ridgeland, MS 39158-3080



/s/ Brenen G. Ely
OF COUNSEL